CIVIL ACTION NO. 09-52-GWU

LEANN H. WARFORD,                                              PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

Leann Warford brought this action to obtain judicial review of an unfavorable

administrative decision on her application for Disability Insurance Benefits (DIB).

The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities?  If not, a
    finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine
    whether the claimant's severe impairment(s) or combination of
    impairments meets or equals in severity an impairment listed
    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u>  <u>Accord,</u> <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

09-52  Leann H. Warford

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Warford, a 46-year-old former computer technician/computer operator with a high school education, suffered from impairments related to obesity, being status post gastric bypass surgery, being status post bilateral total knee replacements, being status post lysis of adhesions for small bowel obstruction and internal hernia, chronic pain syndrome, fibromyalgia, chronic fatigue syndrome, mild degenerative disc disease of the lumbar spine, a major depressive disorder, possible anxiety disorder and a history of migraines. (Tr. 19, 28). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 22-23, 28). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 28-29). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 29).

The court must first determine the time period pertinent to this appeal. Warford alleged a disability onset date of December 5, 2003 on her current DIB application. (Tr. 139). In an earlier administrative decision which became final on February 15, 2006, the plaintiff had been found disabled for a closed period between December 5, 2003 and June 11, 2005. (Tr. 90). After this date, the claimant was found able to perform a restricted range of sedentary level work and

could no longer be considered totally disabled since this available work constituted a significant number of jobs in the national economy. (Id.). The ALJ did not reopen this earlier decision on the current application and, so, based on the doctrine of administrative res judicata, it is final for the administration. (Tr. 16). Therefore, the relevant time frame for consideration of this DIB claim runs from February 16, 2005 through the November 27, 2007 date of the current denial decision.

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. The ALJ did not deal properly with the evidence of record relating to Warford's mental condition. However, the current record also does not mandate an immediate award of DIB. Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

The hypothetical question presented to Vocational Expert Betty Hale included an exertional limitation to sedentary level work, restricted from a full range by such non-exertional restrictions as (1) an inability to more than occasionally push, pull or operate foot controls; (2) an inability to ever crawl and climb ropes, ladders or scaffolds; (3) an inability to more than occasionally stoop and kneel; (4) a limitation to simple, repetitive work with no frequent changes in work routine; and (5) an inability to perform work requiring complex or detailed problem solving, independent planning, or the setting of goals. (Tr. 65). In response, the witness identified a

significant number of jobs which could still be performed.  (Tr. 65-67).  The ALJ relied upon this information to support the administrative decision.

Warford alleges that the ALJ erred in evaluating her mental condition for several reasons.  She first asserts that the ALJ erred in rejecting the opinion of Psychologist Ramesh Ghanta, her treating mental health professional.  Ghanta diagnosed a major depressive disorder and an anxiety disorder in July of 2007.  (Tr. 323).  In August of 2007, the psychologist completed a Mental Medical Source Statement upon which he identified "severe" limitation of ability in such areas as understanding and remembering short and simple (one- or two-step) repetitive instructions or tasks, understanding, remembering and carrying out detailed (three or more steps) instructions which may not be repetitive, maintaining attention and concentration for at least two straight hours with at least four such sessions in a work day, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being distracted, interacting appropriately with the general public or customers, accepting instructions or responding appropriately to criticism from supervisors, and responding appropriately to expected and unexpected changes in the work setting and routine.  (Tr. 325-326). The plaintiff's limitation of ability was rated as "moderately" severe in such areas as remembering locations and work-like procedures, carrying out simple repetitive instructions, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically-based symptoms and to

perform at a consistent pace without an unreasonable length and number of rests, asking simple questions or requesting assistance from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, setting realistic goals or making plans independently of others and being aware of normal hazards and taking simple precautions. (Id.). These are far more severe mental restrictions than those presented to the vocational expert. Ghanta also indicated that Warford was totally disabled by her mental problems. (Tr. 324).

The ALJ rejected Ghanta's disability opinion and his mental restrictions as binding despite his status as a treating source. (Tr. 23). Warford asserts that this action was erroneous. However, the court finds no error with this portion of the administrative decision. With regard to the psychologist's statement that the plaintiff would be unable to hold a job, the defendant has noted such an opinion is not binding on the administration under the federal regulations. 20 C.F.R. § 404.1527(e)(1). With regard to the numerous specific mental restrictions, the ALJ indicated that these were not well-supported by the relatively modest findings contained in Ghanta's treatment notes and other evidence of record such as the opinions of examining Psychologists Marc Plavin and Michelle Mattingly. (Tr. 20-21, 23-24). The ALJ noted that the treating source seemed to relate many of the plaintiff's problems to her physical problems, financial strain and chronic pain. (Tr. 23). Ghanta only prescribed medication and did not refer her for hospitalization. (Id.). Under these circumstances, the undersigned finds the cited reasons for

rejecting the opinion as binding sufficient. Nevertheless, this opinion does not support the administrative decision.

Warford argues that the ALJ erred because he did not accept the extent of the severity reported by her treating therapist Gina Underwood. Underwood did suggest the existence of serious mental problems in a September, 2007 letter. (Tr. 332). She did not identify specific mental limitations. The ALJ did discuss Underwood's findings in the text of his decision. (Tr. 25). As conceded by the plaintiff, Underwood, a Licensed Clinical Social Worker, was not an "acceptable medical source" whose opinion would be binding on the ALJ under the federal regulations. 20 C.F.R. § 404.1513. Therefore, the undersigned finds no error on this point.

The undersigned finds Warford's arguments concerning the error of the ALJ's rejection of the opinion of Marc Plavin more persuasive. Plavin examined the plaintiff in July of 2006 and diagnosed a major depressive disorder and possible generalized anxiety disorder. (Tr. 213). The examiner opined that her ability to tolerate stress would be "fair." (Id.). She would have a "fair to poor" ability to complete tasks, show sustained concentration and persistence and respond to pressures of a day-to-day work setting. (Tr. 213-214). The ALJ rejected Plavin's restrictions because his conclusions were based upon the claimant's self-report rather than objective findings. (Tr. 24). However, these subjective complaints were

elicited as a part of the examiner's diagnostic interview.  The Sixth Circuit Court of Appeals, citing Poulin v. Bowen, 817 F.2d 865 (D.C. Cir. 1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . .  In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness . . . .  When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

Blankenship v. Bowen,  874 F.2d 1116, 1121, (6th Cir.  1989).  In Blankenship, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history.  Blankenship, 874 F.2d at 1121.  Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Plavin could rely upon the subjective complaints elicited during the interview in formulating his functional restrictions.  Therefore, the undersigned agrees with the plaintiff that the examiner's opinion was improperly rejected by the ALJ.

The court notes that Psychologist Michelle Mattingly also examined Warford in December of 2006.  Mattingly did not identify specific functional limitations.  (Tr. 270-272).  The testing data did not reveal the existence of a cognitive disorder.  (Tr.

272).   However, testing results on the MMPI-2 did indicate that the plaintiff responded openly and honestly to questions and revealed "overwhelming" psychiatric distress.  (Id.).   Thus, this report does suggest the existence of fairly significant mental problems.

The record was reviewed by Psychologists Jay Athy in July of 2006 (Tr. 230-233) and Edward Stodola in September of that year (Tr. 258-261).   The ALJ indicated relying upon these reports in evaluating Warford's mental condition.  (Tr. 23).  This reliance was misplaced for several reasons.

In relying upon the opinions of the non-examining medical reviewers, the ALJ rejected the opinions of mental health professionals, such as Ghanta and Plavin, who actually treated and examined Warford.  The administrative regulations provide that "we generally give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."   20 C.F.R. § 404.2527(d)(1).   An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for their differing opinion.  Blakely v. Commissioner of Social Security, 581 F.3d 399, 409 (6th Cir. 2009).  Social Security Ruling 96-6p indicates that when the opinion is that of a treating source, the non-examiner should have seen a complete record which includes the opinion of a specialist in the area of the claimant's particular impairment.  In the current action, the non-examiners saw the record in July and September of 2006.  They had no opportunity to see and comment upon Ghanta's

09-52  Leann H. Warford

mental limitations or treatment notes which were issued after this date (Tr. 306-319, 323-326) nor Mattingly's December, 2006 report which included testing indicating "overwhelming psychiatric distress" (Tr. 270-272). The ALJ should at least have sought the advice of a medical advisor who had seen the entire record. Therefore, a remand of the action for further consideration is required on this ground.

As noted by Warford, Athy specifically indicated that he gave the opinion of Plavin "great weight" and that his medical opinion was adopted. (Tr. 232).[1] However, the restrictions indicated by the reviewers are somewhat less severe and there is no explanation. This discrepancy should be addressed upon remand of the action.

The undersigned notes that even if the ALJ could properly rely upon the opinions of the medical reviewers, the ALJ's findings omitted significant mental limitations identified by the reviewers. Each reviewer indicated that the claimant retained the ability to perform simple, repetitive tasks in a simple, routine setting. (Tr. 232, 260). The mental factors of the hypothetical question were consistent with this finding. However, the reviewers also reported that the plaintiff would be "moderately" limited in such areas as maintaining attention and concentration for extended time periods, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent

---

[1]Stodola affirmed Athy's findings without comment. (Tr. 260).

14

09-52  Leann H. Warford

pace without an unreasonable length and number of rest periods, and responding appropriately to changes in work setting. (Tr. 230-231, 258-259). These restrictions were more severe than those found by the ALJ and presented to the vocational expert, particularly that concerning completing a normal workday and workweek, which was not mentioned. Therefore, even the opinions of the medical reviewers do not support the administrative decision, making a remand of the action necessary.

The omitted limitations were noted in the Section I "Summary Conclusions" portion of the Mental Residual Functional Capacity Assessment Form completed by each of the reviewers. The defendant asserts that the restrictions contained in Section I were not intended as the residual functional capacity finding. The reviewers also each completed the Section III portion of the form, captioned "Functional Capacity Assessment," upon which were noted the restrictions which were compatible with the ALJ's findings. (Tr. 232, 260). The defendant asserts that the hypothetical question was essentially consistent with these limitations. The defendant argues that the restrictions contained in Section III are the only ones which count as the limitations found by the reviewer and that those contained in Section I are irrelevant.

The Sixth Circuit Court of Appeals recently declined to reach the issue concerning whether the more specific restrictions of Section I or the limitations noted in Section III apply when there is an apparent discrepancy between the two

sections since the hypothetical factors failed to include all of the mental restrictions identified in either section.  Ealy v. Commissioner of Social Security, 594 F.3d 504, 516 (6th Cir. 2010).  Thus, the undersigned will continue his longstanding practice on the issue.  See, e.g., Woods v. Barnhart, Civil Action No. 6:04-325-GWU (E.D. Ky. May 18, 2005).  This practice is based on the instructions contained on the Mental Residual Functional Capacity Assessment Form itself.

The instructions for Section I state that:

> This section is for recording summary conclusions derived from the evidence in file.  Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis.  Detailed explanation of the degree of limitation for each Category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

(Tr. 257, 310).  The Instruction for Section III states:

> Record the elaborations on the preceding capacities in this section. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed.  Explain your summary conclusions in narrative form.  Include any information which clarifies limitation or function.  Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

(Tr. 259, 312).  Based upon these instructions, Section I appears to contain the actual mental restrictions found by the mental health professional while Section III is intended for more detailed elaboration and clarification of the limitations or "capacities" contained in Section I.  Thus, if a restriction identified in Section I is not mentioned in Section III, the form instructions lead one to the conclusion that the

16

09-52  Leann H. Warford

restriction was intended by the reviewer to stand without need for a more detailed explanation rather than, as the defendant would have one believe, the limitation concerning that area of functioning is irrelevant.  The fact that Section III is to be completed <u>only</u> after Section I suggests that it is intended to be supplementary to Section I rather than to overrule it.  In this interpretation, the two sections work together rather than contradict each other, which to the court makes much more sense.  It would serve no useful purpose to have a mental health professional go to the trouble of identifying a number of restrictions on Section I if these notations are meaningless.  The aforementioned instructions contained on the Assessment Form lead the court to believe that the limitations of Section I are intended to have relevance.  Therefore, the undersigned finds that Section I contains the actual restrictions concerning mental capacity found by the reviewer and Section III provides additional explanation and clarification but does not negate the Section I restrictions.

The defendant cites the Program Operations Manual System (POMS) for stating that Section I of the form is "merely a worksheet" and "does not constitute the RFC assessment."  POMS DI24520.060(B)(2).  The POMS indicates that the RFC is recorded in Section III of the document.  POMS DI24520.060(B)(4).  According to the defendant, a checkmark in Section I merely indicates that evidence supports the conclusion that the individual's capacity to perform the activity is impaired and the degree of impairment must be described in Section III.   POMS

DI24520.060(B)(2).  As previously noted, the reviewers checked a number of restrictions in Section I but failed to address these in Section III.  This suggests that the reviewers failed to properly complete the form since they indicated a number of areas of impairment in Section I but failed to specify the degree of impairment as required in Section III.  Therefore, under these circumstances, the ALJ could not rely upon the opinion of the reviewers.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 11th day of August, 2010.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**